**AFFIRM; and Opinion Filed August 26, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-11-01211-CR

---

## CHANDA RENEE KIMBELL
## V.
## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F09-15728-W**

---

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice Richter

Following the trial court's denial of her motion to suppress, Chanda Renee Kimbell pleaded guilty to possession of a controlled substance with intent to deliver. The trial court found Kimbell guilty and, pursuant to a plea agreement, assessed punishment of five years' imprisonment and a $3,000 fine. In two points of error, Kimbell asserts the trial court erred by denying her motion to suppress because the search of her car and purse was conducted during an unreasonably prolonged traffic stop and because the "dog sniff" was not properly conducted. We affirm the trial court's judgment.

---

[1] The Hon. Martin Richter, Retired Justice, sitting by assignment

**Background**

At the hearing on appellant's motion to suppress, Coppell police officer Kenneth Cochran testified that he stopped appellant at around midnight on May 22, 2009 for speeding (51 mph in a 45 mph zone) and failing to dim her high beam headlights for oncoming traffic. According to Cochran, when he spoke with appellant, her hands were shaking and she would not make eye contact with him. She also seemed "pretty chatty." Appellant told Cochran she was going home. The home where appellant had recently rented a room was also inhabited by an individual Cochran knew to be a methamphetamine user. Appellant admitted to Cochran that she had been previously arrested for license, traffic, and drug offenses. Cochran told appellant he was going to check whether her license was valid or she had any outstanding warrants.

The stop was recorded on video, which was admitted into evidence at the suppression hearing. According to the video, thirteen minutes after the stop, Cochran told appellant he would not issue her any traffic tickets for the speeding and headlight infractions. While he was waiting for the report on appellant's license and warrant status, Cochran can be heard on the video telling another officer he was going to try to obtain appellant's consent to search the car. Seventeen minutes after the stop, Cochran told appellant that she had been cleared on her license and warrants.[2] During this seventeen minute period, Cochran made no effort to issue any traffic citations or to conduct a canine sniff, but instead engaged in casual conversation with appellant.[3]

Cochran testified that when his "cover" officer arrived on the scene, Cochran asked appellant for her consent to search the car. Appellant refused to consent, responding that she wanted to go home to bed. Cochran told appellant that he was going to search the outside of the

---

[2]     Cochran told appellant on the video that she was "all clear" on searches of her record.

[3]     Cochran and appellant talked about their mutual acquaintance, the methamphetamine user, the car appellant was driving, the difference between Oak Cliff and Coppell, night blindness, Cochran visiting Dallas, and the speed limits in Coppell. During this time, the officer said to appellant "what attracted me was your headlights and you just happened to be going 6 over."

car with his narcotics detection dog Nobel because of appellant's history of prior arrests. Appellant continuously voiced her objections that this was unfair. Cochran repeated he was not going to arrest her for any traffic violations and would release her if Nobel did not alert. However, Cochran indicated that if Nobel alerted to the presence of drugs, he was going to search inside the car.

Cochran asked appellant to step out of her car. Appellant took her purse from the car as she exited. Cochran explained that he usually asks people to leave their property inside the vehicle for officer safety, and he believed that he asked appellant to leave the purse in the car. Cochran had appellant sit on a curb.

Cochran then proceeded to run Nobel along the outside of the car. According to Cochran, Nobel gave an "abnormal positive alert" on the passenger side of the car. The video indicates this alert occurred twenty-three minutes after the stop. Cochran testified the abnormal alert was "still an alert" for the purposes of his search. Nobel was trained to paw or bite at the source of the odor of narcotics. Cochran said that Nobel had both paws on the passenger window sill, with his head up sniffing. His head was looking down at the passenger seat. Cochran explained, "[Y]ou can't expect a K-9 to paw at that situation because they'll fall down." He further explained,

> In this case, on the window, he put his paws on it. He looked into the vehicle and looked down at the seat and sniff, sniff, sniff, sniff, sniff, sniff. You know, he's like, "I found the odor. I found it." Then he looks back at me like, "Where's my toy at?" That's just a normal part of dog training is they get rewarded when they find the odor.

During the search, Cochran remarked on the video that Nobel was acting "weird." After the search concluded, Cochran informed the other officer that the dog had given an abnormal alert that was not his "normal thing," but that he thought it meant the dog had found a faint odor.

He told the officer he was going to "call it." He reiterated that he was going to call the reaction an alert, although it was not what he had expected.

Almost twenty-five minutes after the stop began, the officers asked appellant when she last had drugs in the car. Appellant admitted she had methamphetamine and marijuana in the car about a month earlier. At that point, Cochran told appellant that Nobel had given an abnormal alert on the car window indicating whatever the narcotic odor was coming from had come out of the car. The officer told appellant he had probable cause to search the car and all of its contents.

Cochran testified that, at that point, he suspected drugs were in appellant's purse and that Nobel was alerting to the lingering odor from where the purse had been in the car. He was "stumped," however, because appellant had removed the purse and was holding it. He told appellant she needed to give the purse to the cover officer. Appellant refused, and she refused to consent to a search of her purse or her car. This made Cochran more convinced that appellant had drugs in the purse. Cochran testified,

> My first instinct was to take the purse from her and search the purse based on the dog hit on the vehicle. But doing the best I could, be honest with you, with the hiccup [appellant taking her purse out of the car] I had encountered on the traffic stop, I made some phone calls to my on-duty patrol sergeant. He didn't know anything, was useless. He said he was going to call the Narcotics Organized Crime Unit Sergeant. I then called the handler from Grapevine, who was no help to me. Then I finally got ahold of the detective . . . who actually trained me and Nobel . . . and I ran the scenario past him. He kind of guided me through the situation.

The trainer advised Cochran to first search appellant's car. Then, if no paraphernalia was found in the car, Cochran was to have Nobel search the inside of the car and see if he alerted. At that point, the trainer advised, Cochran was to take the purse from appellant, put it on the ground with two other control items and have Nobel sniff the three items. If Nobel alerted on the purse, Cochran was then permitted to search the purse. If Nobel did not alert on the purse, however, Cochran was to end the inquiry and release appellant.

–4–

From approximately forty-five to fifty-seven minutes into the stop, the officers searched appellant's car, including the trunk. They then searched the car with the dog until nearly an hour into the stop. Approximately sixty-six minutes into the stop, Cochran put appellant's purse on the ground behind her car. The video recording does not reveal how Cochran got appellant's purse or whether she consented to give it to him, but Cochran testified that he believed appellant did not give them any problems when she handed over the purse. Cochran put down two other objects and had the dog sniff all three. Cochran admitted it was the first time Nobel had been asked to perform a package search of individual items so he "wasn't real sure how he would handle it." The first two times Nobel sniffed appellant's purse, he showed no noticeable reaction to the purse and did not appear to give an alert. The third time, he pawed at the purse twice in a non-aggressive manner.

At around seventy-two minutes after the stop, Cochran searched the purse and found methamphetamine inside. Appellant was handcuffed approximately seventy-three minutes after her initial stop. Cochran conceded the stop was "very lengthy."

At the hearing on appellant's motion to suppress, the trial court did not rule on the motion, and the docket sheet reflects the court took the motion under advisement. At the sentencing hearing, however, the trial judge noted that appellant had been given the right to appeal the "Motion to Suppress decision I made against you."

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an

–5–

evaluation of credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We review mixed questions of law and fact that do not depend on credibility and demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). When, as in this case, the trial court has not made explicit findings of fact and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150; *see also Kelly*, 204 S.W.3d at 219 (if party with burden "loses in the trial court and the trial court makes no explicit fact findings, then this party should usually lose on appeal").

**Applicable Law**

An officer may lawfully stop and reasonably detain a person for a traffic violation. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *see Terry v. Ohio,* 392 U.S. 1, 21, (1968). Routine traffic stops are more analogous to investigative detentions than custodial arrests and are thus analyzed as *Terry* stops. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

An investigative detention – either as part of, or apart from, a traffic stop – is a seizure for Fourth Amendment purposes. *See Francis v. State,* 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). Therefore, a traffic stop and any concomitant investigative detention must be reasonable under the United States Constitution and the Texas constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9. To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry*: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *Terry*, 392 U.S. at 19–20; *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). Under the second part of the *Terry* inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63, (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985).

There is no question on this record that Cochran was justified in his initial detention of appellant for the traffic violations. The crux of the issue here is whether the detention was unnecessarily prolonged without reasonable suspicion. In *United States v. Brigham,* 382 F.3d 500 (5th Cir. 2004) (en banc), the Fifth Circuit stated that "a traffic detention may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion [regarding offenses other than that for which the stop was made], supported by articulable facts within the officer's professional judgment, that emerges during the stop." *Id.* at 512. But once the investigation of the conduct that was the subject of the traffic stop is concluded, the continued detention of the subject is permissible only if the officer, on the basis of observations and information developed during the stop, reasonably suspects that the person

detained had engaged, was engaging, or was soon to engage in criminal conduct. *Le Blanc v. State*, 138 S.W.3d 603, 605 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Woods v. State*, 956 S.W.2d 33, 35, 38 (Tex. Crim. App. 1997)). The detention may be prolonged beyond the point at which the purpose of the initial stop is complete if there is reasonable suspicion to believe another offense has been or is being committed. *Lambeth v. State,* 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd). However, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *Davis,* 947 S.W.2d at 243.

We review the reasonableness of the detention from the same perspective as the officer. In determining whether the officer had reasonable suspicion to believe another offense had been or is being committed, we give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. *See Davis*, 947 S.W.2d at 243 n.3. Using an objective standard, we ask whether the facts available at the moment of detention would warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22; *Davis*, 947 S.W.2d at 243. The determination of reasonable suspicion is made by considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).

**Reasonableness of Detention**

In her first point of error, appellant complains the trial court erred by denying her motion to suppress because the search of her car and purse was conducted during an unreasonably prolonged traffic stop.

In a routine traffic stop, an officer may properly request certain information from the driver, such as a driver's license and car registration, and conduct a computer check on that

information. *Kothe*, 152 S.W.3d at 63. It is only after this check is completed and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, and the officer, at his discretion, chooses whether to issue a citation that the traffic-stop investigation is fully resolved. *Id.* at 62 n.36.

Seventeen minutes into the stop, Cochran told appellant she was clear and he was not going to arrest her for any traffic violations. At this point, the purpose of the traffic stop had been effectuated. However, during the stop, Cochran had observed that appellant was nervous, her hands were shaking, and she was "chatty." Cochran had also confirmed that appellant had previously been arrested for drug offenses and was currently living in a house with a known methamphetamine user. Cochran was suspicious that appellant had drugs in her car. He, therefore, decided to conduct a canine sniff of appellant's car.

In *Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012), the defendant's car was stopped for traveling 79 miles per hour in a 65 mile-per-hour zone. When the officer approached the defendant's car, he noticed the defendant was nervous, her hands were shaking, and she was looking down into a purse or bag. *Id.* at 304. After asking the defendant to get out of the car, the officer asked her several questions, including whether she had ever been in trouble for anything. The defendant answered, "no." *Id.* The officer told the defendant he was going to write her a citation for speeding. *Id.*

The officer returned to his patrol car and called dispatch to check on the defendant's criminal history. *Id.* He learned the defendant had nine arrests, including four arrests for possession of a controlled substance, with the most recent arrest being seven months prior to the stop. *Id.* The officer requested the defendant's permission to search her car, but she refused. *Id.* The officer then called for a drug dog and told the defendant he was doing so because she seemed nervous and had lied to him. *Id.* The drug dog alerted on the defendant's car. *Id.* at 305.

A search of the car revealed a canister containing a glass pipe and methamphetamine. *Id.* The trial court denied the defendant's motion to suppress the evidence seized from her car. *Id.*

The defendant appealed, arguing the officer had sufficient time to effectuate the purpose of the traffic stop and the officer did not have reasonable suspicion to support prolonging the detention. *Id.* at 307. The court of criminal appeals affirmed the trial court's ruling, noting the officer had the following information that, when viewed as a whole, was sufficient to establish reasonable suspicion: (1) the defendant was traveling late at night; (2) she had exceeded the speed limit; (3) she was nervous, with hands shaking; (4) she had a prior criminal record; (5) this record included arrests for drug offense; (6) one of the drug arrests was recent; and (7) she responded, "no," when asked whether she had ever been in trouble before. *Id.* at 308.

In this case, Cochran stopped appellant around midnight for speeding and failing to dim her headlights for oncoming traffic. Prior to the traffic stop being fully resolved, Cochran observed that appellant was nervous, her hands were shaking, and she was "chatty" and failed to make eye contact. He also learned she had a criminal history, including arrests for drug offenses, and was living in the same house as a known methamphetamine user. We conclude Cochran had reasonable suspicion to further detain appellant and continue his investigation. *See Hamal*, 390 S.W.3d at 308; *Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (defendant's nervousness, furtive movements, and response to officer's questions gave officer reasonable suspicion to continue detention).[4]

---

[4] *See also Andemichael v. State*, No. 10-12-00306-CR, 2013 WL 1286690, at *2 (Tex. App.—Waco Mar. 28, 2013, no pet.) (mem. op., not designated for publication) (defendant's nervousness, facial tremors, failure to make eye contact, prior criminal history, and going "back and forth" on whether would consent to search of vehicle gave officer reasonable suspicion to extend detention); *Baxter v. State*, No. 02-10-00364-CR, 2011 WL 3835664, at *5 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op., not designated for publication) (officer had reasonable suspicion to extend traffic stop based on manner in which car initially swerved and accelerated, driver's extreme nervousness, defendant's unusual manner, and defendant's vague answers to officer's questions); *Erskin v. State*, No. 01-08-00866-CR, 2010 WL 2025754, at *6 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem. op., not designated for publication) (officer had reasonable suspicion to extend traffic stop for canine sniff based on defendant acting out of ordinary, being abnormally nervous, breathing heavily, sweating in cool weather, avoiding eye contact, and traveling from an area known for the prevalence of drug crime and there being a heavy odor of cologne and air freshener emanating from vehicle).

Viewing the evidence in the light most favorable to the trial court's ruling, and looking at the totality of the circumstances while giving almost total deference to the trial court's determination of facts, we conclude the trial court did not err by finding these factors gave rise to reasonable suspicion sufficient to justify Cochran's six-minute detention of appellant to conduct a canine sniff on her car. We resolve appellant's first point of error against her.

## Dog Sniff

In her second point of error, appellant contends the trial court erred by denying the motion to suppress because the dog sniff was not properly conducted. Appellant specifically argues Nobel did not alert on either the car or her purse.

The use of a well-trained narcotics detection dog during a lawful traffic stop that reveals no information other than the location of an illegal substance does not amount to a search under the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 409–410 (2005). The trial court heard evidence of Nobel's and Cochran's training and that Nobel was ninety-six percent accurate in sniffing out drugs. Cochran testified as to how Nobel is trained to behave to indicate drugs are present. Cochran testified that Nobel gave an alert on both the passenger side of appellant's car and on appellant's purse. Further, the trial court viewed the video recording of the search and observed Nobel's behavior as to both appellant's car and purse.

The trial court made an implied finding of fact that Nobel properly alerted to the presence of drugs in appellant's car and purse. *See Turrubiate*, 399 S.W.3d at 150; *Kelly*, 204 S.W.3d at 219. Giving the appropriate deference to the trial court's finding, we conclude that the evidence, viewed in the light most favorable to the trial court's ruling, supports that finding. Accordingly, the trial court did not abuse its discretion by determining Nobel properly alerted to the presence of drugs in both appellant's car and purse. We resolve appellant's second point of error against her.

–11–

We conclude the trial court did not err by denying appellant's motion to suppress. We affirm the trial court's judgment.


/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED


Do Not Publish
TEX. R. APP. P. 47

111211F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHANDA RENEE KIMBELL, Appellant

No. 05-11-01211-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. F09-15728-W.
Opinion delivered by Justice Richter,
Justices FitzGerald and Fillmore
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of August, 2013.

/Martin Richter/

MARTIN RICHTER
JUSTICE, ASSIGNED