

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-13-00067-CR
No. 07-13-00068-CR
_____

DAIDRION CHAMOND RAY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court Nos. 65,696-B, 65,697-B; Honorable John B. Board, Presiding

September 27, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

In this appeal pertaining to the denial of a motion to suppress filed by Daidrion Chamond Ray, we are asked to determine whether the trial court erred in concluding that the officer at least had reasonable suspicion to stop appellant. We rule that it did not.

Chapter One

Most recently, the Court of Criminal Appeals has reiterated that an officer must have reasonable suspicion that some crime was, or is about to be, committed before he may effectuate a traffic stop. State v. Duran, 396 S.W.3d 563, 568-69 (Tex. Crim. App. 2013). Critical to that reasonable-suspicion analysis, according to the court, is whether the stop is supported by specific and articulable facts at its very inception. *Id.* The court continued by saying that "[t]he almost exclusive inquiry appropriate to determining the lawfulness of a traffic stop is whether the officer had 'a pre-existing sufficient quantum of evidence to justify the stop.'" *Id.* at 569. So too were we reminded that whether the officer did is assessed via "an objective standard," that is, a standard obligating the judge to answer whether ". . . a reasonable officer in the same situation [would] believe a crime had been or was being committed?" *Id.* So, the judge is to place himself "in the shoes of the officer at the time of the inception of the stop—considering only the information actually known by or available to the officer at that time" and ask "[w]ould the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.*[1]

Next, once the trial court rules, we, as a reviewing court, must afford almost total deference to the judge's determination of facts (if they are supported by the record), and that deference even applies to his decisions founded upon the interpretation of content appearing in videotapes. *Id.* at 570. In other words, while we may review *de novo*

---

[1] "The question . . . is determined from the facts and circumstances actually *known* to the officer at the time of the detention—what he saw, heard, smelled, tasted, touched, or felt—not what that officer could have or should have known." (Emphasis added.) *Duran v. State*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013). "The standard is not what an omniscient officer would have seen, but rather what a reasonable officer would have done with what he actually did see." *Id*. So, it would seem that while the camera being used by an officer both sees and captures numerous articulable facts that give rise to reasonable suspicion, apparently only those articulable facts seen by the officer with his own two eyes are of import. Of course, this would not be so if the officer stopped to review everything caught on camera before effectuating the detention.

"indisputable visual evidence" contained in a videotape, we "must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation." *Id.* at 570-71.

Given the deference involved, it is incumbent upon us to also "view the evidence in the light most favorable to the trial judge's ruling -- [irrespective of] whether he grants or denies the motion." *Id.* at 571. As said in Duran, the "winning side is afforded the 'strongest legitimate view of the evidence' as well as all reasonable inferences that can be derived from it." *Id.* Thus, the contents of a video capturing the event must also be viewed "in the light most favorable to the trial court's ruling." *Id.*; *Tucker v. State,* 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *State v. Gobert*, 275 S.W.3d 888, 891-92 & n.13 (Tex. Crim. App. 2009).

Chapter Two

With the foregoing admonishments in mind, we turn to the evidence of record. It illustrates that on July 8, 2012, Officer Joel Young was driving his squad car down Amarillo Boulevard at around 4:20 a.m. Driving to his left in on-coming traffic were two vehicles. Both turned left into a parking lot and across the officer's lane of travel. The turn signals of either vehicle could not be seen flashing in the video that captured the maneuver.[2]

While the first car was somewhat distant from the officer when it turned, the second (driven by appellant) was much closer. Its proximity when turning caused the officer to swerve left and into the lane of on-coming traffic. Thereafter, the officer engaged his emergency lights, turned into the lot himself, and proceeded to detain

---

[2] Statute dictates that one must signal his intent to turn. TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011). It seems as though an increasing number of drivers view that directive as a suggestion rather than a mandate.

appellant. Officer Young believed the detention appropriate since appellant failed to yield the right-of-way when turning. See TEX. TRANSP. CODE ANN. § 545.152 (West 2011) (stating that to "turn left at an intersection or into an alley or private road or driveway, an operator shall yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in the intersection or in such proximity to the intersection as to be an immediate hazard").

Rather than wait for the officer to approach, appellant exited his car and walked away despite the officer's commands to halt. Appellant was eventually subdued and arrested. An ensuing search uncovered a firearm on appellant's person and marijuana in his mouth and in the vehicle. Appellant happened to be, at the time, a previously convicted felon.

Chapter Three

Appellant moved to suppress the contraband discovered as a result of the stop. The trial court overruled the motion. Before us, he argues that the trial court erred because the officer lacked probable cause to effectuate the detention. Despite clearly turning in front of the officer and causing him to swerve left, appellant allegedly had no duty to yield the right-of-way because the officer was allegedly traveling between 37 and 42 m.p.h. in a 35-m.p.h. zone. Furthermore, the opinion we extensively quoted above, *State v. Duran*, is cited as support for the proposition.

In *Duran*, the appellant was stopped because he allegedly crossed a lane divider and failed to yield the right-of-way to the officer. The latter had been traveling about 60 m.p.h. in response to a "domestic" call when the appellant turned. The speed limit in that area was 45 m.p.h., however. At a hearing to determine the legitimacy of the stop, Duran presented an ex-police commander who testified that one need not yield to

4

another who is speeding, and the parties apparently stipulated that the turn was lawful. Yet, nowhere in the opinion did the Court of Criminal Appeals suggest that the ex-commander's testimony accurately reflected the law. Its focus lay upon whether the officer actually saw Duran cross over the lane divider. So, *Duran* does not manufacture some exception to the statute obligating one to yield the right-of-way to oncoming traffic when turning.[3] Indeed, it is rather a absurd to say that one must yield the right-of-way to someone driving at or below the speed limit but is free to turn whenever he chooses in front of someone speeding. Given the dangers inherent in both situations, the purpose for the statute is no less applicable in either situation.

Yet, even if we were to assume that one need not yield the right-of-way when turning in front of someone exceeding the speed limit, we cannot say that the record shows the officer was doing so here. The video capturing the event illustrates the presence of signs next to the road. Some of those signs resemble the shape of signs indicating speed limits. But their content is blurred, and it is quite difficult to read whether any designated the speed limit to be 35 m.p.h. or 40 m.p.h. Given that the officer testified the limit was 40 and he was driving slower than that, the trial court was free to accept that evidence as accurate. And, the one thing that *Duran* clearly says is that we, as the reviewing court, must defer to that interpretation of the evidence.

Accordingly, the issue is overruled, and the judgments are affirmed.


Brian Quinn
Chief Justice

Do not publish.

---

[3] Nor is the fact that someone included the proposition espoused by appellant in a headnote to the opinion of consequence. While they may serve a purpose, headnotes are not the law.