

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00219-CR

Robert **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CR-12-033
The Honorable N. Keith Williams, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  July 30, 2014

AFFIRMED

Robert Carter Brown pled guilty to possession of a controlled substance. He appeals the denial of his pre-trial motion to suppress. We affirm.

### DISCUSSION

The trial court conducted a hearing on Brown's motion to suppress, along with motions to suppress filed by his two co-defendants, Michael Morelli and Darius Dukes. At the hearing, Sergeant Gerald Johnson Jr. of the Bandera County Sheriff's Department testified that on January 14, 2012, the sheriff's department received a phone call from a woman named Katherine Hay. Hay

reported that there was illegal activity occurring at the house of her nephew, Michael Morelli. Specifically, Hay stated that people in the house were packaging marijuana and cocaine. In response to this call, Sergeant Johnson conducted surveillance on the house. At about 10:15 p.m., he saw three people leave in a silver-colored vehicle. According to Sergeant Johnson, he decided that, if he had probable cause to stop the car, he would do so. As Sergeant Johnson followed the vehicle, he saw that the car had a defective license plate light—that is, he saw there was no light on the license plate at all, which is a violation of the law. Morelli was driving the car, and Dukes and Brown were passengers. The car belonged to Dukes's girlfriend.

According to Sergeant Johnson, when he stopped the car for the violation, Morelli got out of the car. Sergeant Johnson explained the reason for the stop and walked Morelli to the rear of the car to show him that the light on the license plate was not working. Morelli looked under the light and tried tapping on it to get the light to come back on. The light, however, did not come on. At no time during the traffic stop did Morelli say anything to the effect that the license plate light was working.

Sergeant Johnson testified that while speaking with Morelli, he smelled the odor of marijuana coming from inside the vehicle. He then ordered Dukes and Brown to step out of the car. By that time, another officer, Deputy Kasey Young, had arrived, and Sergeant Johnson and Deputy Young conducted a search of the vehicle, which resulted in them finding marijuana and oxycodone. They then arrested the three men for possession of marijuana. Sergeant Johnson testified he then told Morelli about the call the sheriff's department had received about illegal activity occurring at Morelli's house. According to Sergeant Johnson, Morelli then volunteered to have his house searched. Deputy Young took Dukes and Brown to the sheriff's office while Sergeant Johnson and Morelli went to Morelli's house.

When Sergeant Johnson and Morelli arrived at the house, Sergeant Johnson removed Morelli's handcuffs and told him that since he was cooperating, he would not be arrested that night. According to Sergeant Johnson, Morelli seemed to understand that he was not under arrest. Morelli then unlocked the front door of the house, and before Sergeant Johnson even entered the house, he saw drugs on the coffee table in the living room. Morelli told Sergeant Johnson he did not realize the drugs were in his house. They went into Morelli's bedroom where Sergeant Johnson found scales containing cocaine residue and baggies. Morelli then gave Sergeant Johnson a pipe out of his closet and said he had smoked crack cocaine for the first time earlier that day. Sergeant Johnson took Morelli to the sheriff's office to make a written statement.

Morelli gave two written statements—one to Sergeant Johnson and one to Deputy Young, both of which were admitted into evidence. In both statements, Morelli stated that when he was stopped, Sergeant Johnson showed him that the light on the license plate was out. Morelli stated that he tried to tap on it to get it to come back on. According to Morelli's statements, Sergeant Johnson asked him if he had any drugs in his house, to which he responded that to his knowledge he did not. Also according to Morelli's statements, Morelli told Sergeant Johnson he could go to his house and look if he wanted to do so. In addition to Morelli's statements, a dash cam video recording of the traffic stop was admitted into evidence.

Morelli testified at the motion to suppress hearing that he was stopped by Sergeant Johnson because his license plate light was out. He testified he walked to the rear of the car with Sergeant Johnson and tapped on the light. According to his testimony at the hearing, there were two lights on the license plate, and one was out but the other one was functioning. He was then handcuffed while the officers searched the car. Sergeant Johnson told him there were calls earlier to the sheriff's department about drug trafficking going on at his house. Morelli stated he responded that to his knowledge, that was not correct. Sergeant Johnson then asked if they could go to his house

and see. He responded he would gladly go because he had nothing to hide. Morelli testified that when they got to the house, the handcuffs were removed; however, Morelli testified that he did not feel free to go. According to Morelli, when he was handcuffed, he felt he was arrested and felt pressure to comply with Sergeant Johnson's request. He felt he was in custody and could not refuse a search of his house. Nevertheless, Morelli testified he would have freely and voluntarily allowed a search of his house because he had nothing to hide. Morelli testified that at his house, Sergeant Johnson again asked for consent to search, and Morelli again gave consent because he had nothing to hide. Morelli admitted, however, that he had ingested crack earlier that day at his house. According to Morelli, Sergeant Johnson told him he would not be arrested that night. Morelli was not arrested until about a week later.

After hearing all the evidence, the trial court denied Brown's motion to dismiss and made findings of fact and conclusions of law, which included, in pertinent part, the following fact findings:

- Johnson saw that [the] license plate light was defective and showing no light at all on the license plate.

- Johnson had his headlights on and turned on his official lights in order to make the car stop.

- Johnson pulled in behind the car.

- Johnson stopped the car in Bandera County, Texas due [to] the defective license plate light.

- Johnson showed Morelli that the license plate light was out on the car.

- Morelli tapped on the license plate light in order to try to make it come back on, but it did not.

- The license plate light was not working on the car at the time of the stop of the car by Johnson.

- Neither Brown nor Dukes made any claims or statements that they lived or resided with Morelli that night.

- After informing Morelli about the contents of a telephone call earlier in the day that was received by Johnson concerning the presence of marijuana seen in Morelli's home, Morelli volunteered to have Johnson search his trailer home . . . .

- Once Johnson took Morelli to his home that night, Johnson took all handcuffs or restraints off of Morelli.

- Johnson told Morelli that he was not going to be arrested that night.

- Johnson then asked Morelli for consent to search Morelli's home that night.

- Morelli told Johnson at least one additional time that he did consent to the search of his home that night.

- Johnson found cocaine, scales, and cellular telephones, along with marijuana and a crack pipe at Morelli's home that night.

- Brown and Dukes did not live or reside at Morelli's home, and were not occupants of Morelli's home.

The trial court's conclusions of law included the following:

- Johnson had probable cause to stop the car driven by Morelli that night because of an offense being committed in Johnson's presence, namely failure to have the license plate illuminated by a white light.

- After considering the totality of the circumstances, the State proved by clear and convincing evidence that Morelli freely, voluntarily, positively and unequivocally consented to the search of his home that night by Johnson.

- Neither Brown nor Dukes had any reasonable expectation of privacy in Morelli's home.

## DISCUSSION

In two issues on appeal, Brown contends his motion to suppress should have been granted because the evidence establishes that (1) the vehicle he was riding in had a completely illuminated license plate in accordance with the law, and (2) Morelli's consent to search his house was involuntary.

In reviewing a suppression ruling, we afford almost total deference to the trial court's determination of facts—if those facts are supported by the record. *State v. Duran*, 396 S.W.3d 563,

570 (Tex. Crim. App. 2013). That same deferential standard of review "applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)) (alteration in original). Although we may review de novo "indisputable visual evidence" contained in a video recording, we must defer to the trial court's factual finding on whether a witness actually saw what was depicted on a video recording or heard what was said during a recorded conversation. *Id.* at 570-71. We view the evidence in the light most favorable to the trial court's ruling. *Id.* at 571. We review a trial court's application of the law to the facts de novo and will affirm its ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *Id.*

The evidence shows that Sergeant Johnson stopped the car driven by Morelli because the license plate was not illuminated. *See* TEX. TRANSP. CODE ANN. § 547.322(f) (West 2011) (requiring rear license plate to be illuminated by a white light and clearly legible at a distance of fifty feet). On appeal, Brown contends that Sergeant Johnson did not have reasonable suspicion or probable cause to stop the vehicle Brown was riding in because Sergeant Johnson did not witness any violation of the law. Brown argues that although Sergeant Johnson testified there was no light showing on the license plate, the videotape from Sergeant Johnson's dash cam is contradictory because it shows the license plate brightly illuminated. And, according to Brown, this Court is not bound to give the trial court's fact findings the normal deference when the video evidence clearly undermines the trial court's findings. The Texas Court of Criminal Appeals has explained that an appellate court may review de novo "indisputable visual evidence" contained in a videotape. *Duran*, 396 S.W.3d at 570-71. However, the appellate court must still defer to the trial court's factual finding on whether a witness actually saw what was depicted on a video recording or heard what was said during a recorded conversation. *Id.* In reviewing the video recording admitted in

evidence in this case, we conclude that it does not constitute "indisputable visual evidence." The video recording shows Sergeant Johnson's vehicle following behind the vehicle driven by Morelli, with its headlights and overhead lights on as Sergeant Johnson stopped the vehicle. The rear of the vehicle is illuminated, but it is unclear whether the illumination on the back of the vehicle was caused by the light on the license plate or the headlights and overhead lights on Sergeant Johnson's vehicle. Thus, as the video recording does not indisputably show the license plate light was illuminated by the light on the license plate at the time of the stop, we view the evidence in the light most favorable to the trial court's ruling. *See id.* at 571.

The trial court heard testimony from Sergeant Johnson that the license plate light was not working when he stopped the vehicle driven by Morelli. Further, although Morelli testified that one of the two license plate lights was working that night, there was no indication in either of Morelli's statements that there was a working license plate light when he was stopped. Thus, there was evidence to support the trial court's findings that the license plate light was not working. The trial court also viewed the video recording, which does not, as Brown argues, clearly and indisputably show that the license plate light was working. After reviewing the video recording, the trial court made findings that (1) Sergeant Johnson had his headlights and official lights on in order to make the stop; (2) he pulled in behind Morelli's car, and (3) the license plate light on Morelli's car was not working. Because we defer to the trial court's findings, we hold that the State met its burden of showing Sergeant Johnson observed a traffic violation and thus had probable cause to stop the vehicle.

In his second issue, Brown argues that his motion to suppress the evidence found in Morelli's residence should have been granted because Morelli's consent to a warrantless search was not voluntary. The State responds that Brown has failed to show he had standing to complain about an invasion of privacy of *Morelli's residence*. "Although we defer to the trial court's factual

findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

In order to complain about a warrantless search, a defendant has the burden to show he had a legitimate expectation of privacy in the place searched. *See Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). Relevant factors include

> (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Id.* at 224.

We agree with the State that Brown failed to meet his burden to show standing to complain about a search of Morelli's residence. There was no evidence, nor does Brown point to any evidence, that he was anything other than a guest in Morelli's home for a short period of time. Therefore the trial court did not err in finding that Brown had no reasonable expectation of privacy in Morelli's home.

We affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish