COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

VALERIE RENEE CRANE,                               No. 08-13-00132-CR

§

     Appellant,                                    Appeal from the

§

v.                                                County Criminal Court No. 9

§

THE STATE OF TEXAS,                               of Tarrant County, Texas

§

     Appellee.                                     (TC# 1257243)

§

## **O P I N I O N**

Valerie Renee Crane appeals her conviction on one count of driving while intoxicated. In her sole appellate issue, Crane contends the trial court incorrectly denied her motion to suppress certain incriminating statements that she maintains were fruits of an illegal seizure. We affirm.

### BACKGROUND

At the suppression hearing, North Richland Hills Police Officer Jonathan Richerson testified that he was patrolling an area known for high amount of drug activity near a Motel 6 on Bedford Euless Street. As he pulled into the parking lot, Officer Richerson witnessed Appellant back out of a parking space and move toward a driveway before stopping for about fifteen seconds to look through the car's center console. She then looked up and made eye contact with Officer Richerson, who was sitting in a marked police vehicle. Appellant drove through the

driveway at a normal rate of speed to the part of the parking lot on the other side of the motel and parked there. Officer Richerson conceded that Appellant did not weave, hit a curb, or do anything to otherwise indicate that she was intoxicated while maneuvering through the driveway.

Officer Richerson then witnessed Appellant exit the vehicle after thirty seconds and walk through a breezeway to a spot near the pool. He drove his car around to a different side of the motel so he could see her better. From the other side of the motel, he could see that Appellant was talking on a cell phone. Officer Richerson further testified that when she saw him parked on the other side of the motel, she walked back through the breezeway she had just come from. Officer Richerson then drove back around to his original position, exited his vehicle, and approached Appellant.

Officer Richerson stated that as he approached Appellant, he said "Hi, what are you doing?" At the time he called out to Appellant, he was standing about twenty feet away from her and he did not have his weapon drawn, nor did he flash his red and blue police lights before approaching Appellant. He maintained that he did not impede her path of egress, as she could have walked away using the sidewalk or simply turned around and walked back through the breezeway. Officer Richerson also did not affirmatively identify himself as a police officer, although he was driving a marked police unit and wore a police uniform.

Officer Richerson testified that Appellant threw away her keys before coming over to talk to him. He further testified that as she approached him, he noticed that she had bloodshot eyes, and he could smell the odor of alcohol. Appellant told him that she had just come from Chili's Restaurant and Rack Daddy's, a bar Officer Richerson knew sold alcohol. She also said her friends were coming to pick her up from the motel because she was too drunk to drive. Officer Richerson testified that following this initial conversation with Appellant, he developed

2

reasonable suspicion that she had been driving while intoxicated.

The trial court admitted a copy of Officer Richerson's dash camera video into evidence. The video starts shortly before Officer Richerson and Appellant's first interaction. Officer Richerson and Appellant are not visible in the video. However, there is some audible audio of the interaction between Officer Richerson and Appellant, though much of the dialogue is unintelligible. From what can be heard, Officer Richerson says "hi, what are you doing?" Appellant denied that she had driven to the motel, stating that her friends had driven her car to the motel and dropped her off so that other people could come pick her up. She also stated that she was "too drunk to drive" and that she had only driven around through the parking lot. About three minutes and thirty seconds into the video, a second police officer drives a marked unit to the area, exits the vehicle, and approaches Officer Richerson and Appellant off-camera. The remainder of the video consists of continuing questioning and an off-screen sobriety test.

At the conclusion of the hearing, the trial court made a series of oral findings and denied Appellant's motion to suppress, holding that the interaction between Appellant and Officer Richerson was a consensual encounter requiring no special Fourth Amendment protections.

Crane appealed.

## DISCUSSION

In her sole issue, Appellant complains that Officer Richerson unlawfully detained her without reasonable suspicion from the moment he asked her what she was doing, rendering any subsequent statements she made the result of a Fourth Amendment violation. We disagree.

### *Standard of Review and Fourth Amendment Framework*

We review the trial court's suppression ruling under a bifurcated standard, assessing "a trial court's determination of historical facts" for abuse of discretion "and reviewing *de novo* the

3

court's application of the law of search and seizure." *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). Where video evidence is present in the record, we may review the "indisputable visual evidence contained in [the] videotape" *de novo*. *State v. Duran*, 396 S.W.3d 563, 570-71 (Tex.Crim.App. 2013)[Internal quotations and citation omitted](appellate court need not defer to fact finder where "indisputable visual evidence contradicting" testimony appears in record). However, "the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation." *Id*.

The Fourth Amendment to the United States Constitution shields "the people" from unreasonable government searches and seizures of their "persons, houses, papers, and effects," or from unreasonable searches of any area in which they possess a reasonable expectation of privacy. U.S. CONST. AMEND. XIV; *United States v. Jones*, 132 S.Ct. 945, 950-51, 181 L.Ed.2d 911 (2012). Police detention constitutes a seizure under the Fourth Amendment. *Wade v. State*, 422 S.W.3d 661, 668 (Tex.Crim.App. 2013). However, not every police-civilian interaction constitutes a seizure triggering Fourth Amendment protections. *Id*. at 667. Where a police officer approaches a civilian and initiates conversation, the interaction is considered to be consensual unless "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999)(citing *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991)). Consensual encounters do not need to be supported by reasonable suspicion or probable cause, as the civilian is free to disengage from the conversation and leave at any time and for any reason. *Id*.

Where a reasonable person would no longer "fe[el] free to ignore the police officer's

4

request or terminate the consensual encounter[,]" the encounter escalates into a detention subject to Fourth Amendment scrutiny. *Wade*, 422 S.W.3d at 667. "No bright-line rule governs when a consensual encounter becomes a detention[;] [c]ourts must take into account the totality of the circumstances of the interaction . . . ." *Id.* There are two types of detention under the Fourth Amendment: investigative stops, also known as *Terry*[1] stops, and arrests. An investigative stop must be limited in scope and duration and must be supported by reasonable suspicion to be constitutional. *Id*. at 667. An arrest must be supported by probable cause. *Id*. Absent the requisite level of reasonable suspicion or probable cause necessary to justify a *Terry* stop or an arrest, the police detention is unreasonable under the Fourth Amendment, and its evidentiary fruits are subject to suppression. *Id*.

### *Analysis*

Upon our review of the record before us, we find no Fourth Amendment violations to support Appellant's suppression argument. Nothing in Officer Richerson's testimony or in the dash camera video suggests that in his initial approach and conversation with Appellant he acted in a threatening way or otherwise indicated to her that she was not free to leave so as to indicate she was detained. *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 n.35 (Tex.Crim.App. 2008)(identifying "whether the officer approached in a non-threatening manner" and "whether he requested or demanded information" as factors to consider in totality of the circumstances analysis). Although there is no useful visual evidence contained in the video, the audio from Officer Richerson's dash camera shows that he used a non-threatening tone of voice in asking Appellant his initial questions. *Id*. (identifying whether officer asked or demanded information as a factor). His uncontroverted testimony also established that Appellant had two options of egress if she had wished to terminate the encounter. *Id*. (elimination of path of egress a factor).

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)

We do note that at approximately three minutes and thirty-five seconds into the video, a second police unit parks in front of Officer Richerson's car, and a back-up police officer exits and walks toward where Officer Richerson and Appellant are presumably standing off-screen. Under certain circumstances, the presence of multiple police officers during questioning may lead a reasonable person to assume they are not free to leave, thereby escalating a consensual encounter into an investigatory stop triggering Fourth Amendment protections. *Garcia-Cantu*, 253 S.W.3d at 243 n.35.

We need not decide whether the additional officer's presence did, in fact, convert the consensual encounter into an investigatory stop. Assuming it did, investigatory stops are constitutionally proper when supported by reasonable suspicion. Here, before the second officer arrived, Appellant admitted to Officer Richerson that she was "drunk" and "not driving anywhere" because of her intoxication. Prior to that, Officer Richerson observed Appellant enter her car and drive it from one side of the motel parking lot to another. Officer Richerson also testified that Appellant had bloodshot eyes and smelled like alcohol, and Appellant admitted to having just come from a bar, though she maintained that her friends had driven her car to the motel and dropped her off so another friend could pick her up. Based on the circumstances, Officer Richerson could have had a reasonable suspicion that Appellant had been driving under the influence, thereby justifying any investigatory stop.

Since Appellant does not argue that the stop ripened into a full arrest requiring probable cause and *Miranda*[2] warnings, our analysis concludes there. The initial interaction was a consensual encounter, and to the extent the encounter ripened into a *Terry* stop, reasonable suspicion existed to support it. Suppression was unwarranted, and the trial court properly denied Appellant's motion.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Issue One is overruled.  The judgment of the trial court is affirmed.


October 15, 2014

                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge, sitting by assignment)

(Do Not Publish)