

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-18-00227-CR

Michael Casey **FORAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 11, Bexar County, Texas
Trial Court No. 518258
Honorable Tommy Stolhandske, Judge Presiding

No. 04-18-00230-CR

Michael Casey **FORAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR10025
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

In Appeal Nos. 04-18-00227-CR and 04-18-00230-CR, Appellant Michael Foran appeals the denial of his motions to suppress, arguing that the arresting officer did not have reasonable suspicion to stop his vehicle for a traffic violation. We affirm.

**BACKGROUND**

In the early hours of May 19, 2016, Foran's vehicle was stopped at a red light, with its left-turn signal blinking, at the intersection of St. Mary's Street (a two-way street) and U.S. Highway 281 in San Antonio, Texas. When the light turned green, Foran proceeded through the light, drove under Highway 281's overpass, and began turning left onto Stadium Drive, which acts as a feeder street to Highway 281 and is a one-way street with three lanes. The far-left lane only allows the driver to make a left turn. The middle lane only allows the driver to go straight. The far-right lane allows the driver to go either straight or to make a right turn. Video from the arresting officer's dash camera reflects that when Foran began his left-hand turn, he did not make a wide sweeping left turn in the intersection and turn into the far-right lane from the intersection. Instead, Foran cut diagonally across the intersection. The tires of his vehicle first crossed over the broken white line separating the left-turn only lane and the middle lane. As Foran continued down Stadium Drive, the tires of his vehicle crossed the middle lane and then the broken white line separating the middle lane and far-right lane. By the time Foran finally finished traveling to the far-right lane, he had almost reached the next intersection of Stadium Drive and Mulberry Avenue. When he stopped for a red light at Stadium Drive and Mulberry Avenue, his left-turn signal was still on. The arresting officer, who was following Foran, then initiated the stop for a traffic violation.

Foran was subsequently charged with driving while intoxicated (Trial Court No. 518258) and possession of a controlled substance in an amount less than one gram (Trial Court Cause No. 2106-CR-10025). In each cause number, Foran filed a motion to suppress, arguing that he was arrested and evidence was seized in violation of his constitutional rights and article 38.22 of the

Texas Code of Criminal Procedure. Both the district court judge and the county court judge referred the respective motions to suppress filed in their courts to Bexar County Magistrate Judge Andrew Carruthers.

At the suppression hearing, Officer Jorge Coronado testified that he "observed the vehicle making an improper turn." He explained that Foran "was in the middle lane and then he proceeded to go to the farther right lane and did not use the signal to make that lane change." Officer Coronado was asked, "So after he made the left turn, in your opinion, he entered the middle lane and then went into the right lane?" Officer Coronado replied,

> Well, he was already in the middle lane. And as he was in the middle lane, he then changed over to the right lane. You can see in his – in the video clearly that his vehicle is already traveling in the middle lane and then he diverts and changes lanes . . . . As he's making the left turn, sir, he goes into the middle lane and you can see and observe that he switches over to the right lane. . . . From viewing the video, he is in the middle lane when he makes that left turn. Okay. And then he drifts over to the right lane without using his turn signal. . . . When he was coming from St. Mary's, goes under 281, he makes the left turn, he's doing it the right way. He is going into the middle lane, which is where he needs to be. And then you can visually see [sic] that he starts drifting to the right lane without using his turn signal. If there was to be [sic] other drivers, he's not alerting the other drivers [who are] in that lane that he ended up in that he's making that lane [change].

According to Officer Coronado, "the only reason that [Foran] was pulled over was for not using his turn signal." In addition to Officer Coronado's testimony, the video from his dash camera and his case report was introduced in evidence.

At the end of the suppression hearing, Foran argued that the arresting officer did not have reasonable suspicion to stop him for a traffic violation. Magistrate Judge Carruthers denied the motions to suppress and orally stated his findings of fact and conclusions of law:

> Here are my findings of fact and conclusions of law. The officer's testimony and the video from the officer's dash camera provide reasonable suspicion for the stop in that the defendant moved from the center lane to the right lane without a signal. This provided reasonable suspicion for the stop; therefore, the stop was constitutional.

In both cause numbers, the trial courts adopted the findings and ruling of Magistrate Judge Carruthers.[1] Foran has appealed the trial courts' rulings on his motions to suppress in both cause numbers, which have been consolidated on appeal.

#### DISCUSSION

In his sole issue, Foran argues the trial courts erred in denying his motions to suppress because the arresting officer did not have reasonable suspicion to stop Foran for a traffic violation. In reviewing a trial court's ruling on a motion to suppress, an appellate court "afford[s] almost total deference to the trial [court]'s determination of facts (if those facts are supported by the record)." *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013). "That same deferential standard of review applies to a trial court's determination of historical facts even when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Id.* (quotation omitted). "Although appellate courts may review de novo 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial [court]'s factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation." *Id.* at 570-71 (citations omitted). Further, whether the trial court grants or denies a motion to suppress, an appellate court views the evidence in the light most favorable to the trial court's ruling. *Id.* at 571. That is, the "winning side is afforded the 'strongest legitimate view of the evidence' as well as all reasonable inferences that can be derived from it." *Id.* (citations omitted). Finally, an appellate court reviews the trial court's application of search

---

[1]After the trial courts denied his motions to suppress, Foran entered into plea bargain agreements with the State in both cases. In the county court case, he was sentenced to one year of detention and then placed on community supervision for twelve months. In the district court case, he was given deferred adjudication and was placed on community supervision for one year. The trial courts in both cases certified that although these were plea-bargain cases, "matters had been raised by written motion filed and ruled on before trial and not withdrawn or waived," and Foran had the right of appeal.

and seizure law to the facts de novo and will affirm the trial court's ruling "if the record reasonably supports it and it is correct on any theory of law applicable to the case." *Id.*

An officer may make a warrantless traffic stop if the "reasonable suspicion" standard is satisfied. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). Reasonable suspicion exists when, based on the totality of the circumstances, "the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id.* (quotation omitted). Reasonable suspicion is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

At issue in this appeal are two sections of the Texas Transportation Code. Section 545.101 requires an operator of a vehicle making a left turn from a two-way road to a one-way road to "approach the intersection in the extreme left-hand lane lawfully available to a vehicle moving in the direction of the vehicle." TEX. TRANSP. CODE ANN. § 545.101(b)(1). Then, "after entering the intersection," the operator shall turn left, "leaving the intersection so as to arrive in a lane lawfully available to traffic moving in the direction of the vehicle on the roadway being entered." *Id.* § 545.101(b)(2). Section 545.104 of the Texas Transportation Code requires an operator of a vehicle to use a signal to indicate a lane change. *Id.* § 545.104(a). We interpret "a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended." *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018).

Foran argues that the issue in this appeal "boils down to whether a motorist can traverse the [broken white lines between the lanes] on the path to the destination lane to make a lawful left turn." According to Foran, if, in making a left turn, a motorist can traverse the broken lines between

the lanes on his path to his destination lane, then he did not commit a traffic violation. However, the issue in this case is not whether Foran was guilty of the traffic offense but whether the arresting officer had a reasonable suspicion that he was. *See Jaganathan*, 479 S.W.3d at 247; *see Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.) (explaining that the State "is not required to show a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress").

Both Foran and the State agree that section 545.101(b) permitted Foran to turn left from the two-way street and turn into either of the three one-way lanes available. What they disagree about is whether Foran turned into the middle lane or into the far-right lane. The arresting officer testified at the suppression hearing that Foran turned into the middle lane and then changed lanes without signaling. In reviewing the video from the arresting officer's dash camera in the light most favorable to the trial courts' rulings, we conclude the arresting officer could have reasonably determined that Foran turned into the middle lane and then failed to signal his lane change to the far-right lane. Therefore, we hold the trial courts did not err in denying Foran's motions to suppress.

The judgments of the trial courts are affirmed.

Karen Angelini, Justice

Do not publish