COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SERGIO RENE MONTEJANO, | § | No. 08-12-00235-CR |
| Appellant, | § | Appeal from the |
| v. | § | 168th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20090D05687) |
| | § | |

# **O P I N I O N**

Sergio Montejano appeals his conviction on one count of murder and five counts of aggravated assault by threat stemming from a shooting spree in the Segundo Barrio neighborhood of South El Paso. In six issues, Montejano challenges the evidence underpinning each count of the jury's verdict as legally insufficient. We affirm.

## BACKGROUND
### FACTUAL HISTORY
### *Confrontations on Seventh Street*

On October 4, 2009, Guadalupe De La Pena and his sister-in-law Carmen Marquez De La Pena were walking Guadalupe's dog along Seventh Street toward a bakery on St. Vrain Street in South El Paso when both were approached from behind by an unfamiliar man. De la Pena later identified the man as Appellant at trial. Appellant appeared to be holding something in his

pocket. Appellant asked De La Pena in Spanish "what neighborhood?" De La Pena responded that he was "from nowhere." Appellant responded he was from Alta Vista, and that meant you "do shit and eat it." Both Guadalupe and Carmen De La Pena testified that they thought Appellant appeared to be drunk or somehow intoxicated. Eventually, Guadalupe and Carmen De La Pena continued on to the bakery.

A short time later, Luis Vera was unloading groceries at his home when he saw a man he identified at trial as Appellant sitting about 15 feet away from him, cleaning a black gun. Vera stated that Appellant looked like he had been drinking. Appellant stood up, pointed the gun at Vera, and attempted to pull the trigger. Vera testified he heard the gun make three clicking sounds, but that no bullets came out. Appellant became upset, said "fuck, it didn't come out," and began reloading the gun. Vera testified that he felt horrible when Appellant had pointed the gun at him, and that he thought about his wife and children. His wife then pulled him inside their house.

Following Vera's encounter with the man he identified as Appellant, Norma Gonzalez De Santos and her husband Juan Santos also encountered a young, light-skinned Hispanic man as they attempted to walk down Seventh Street to the grocery store following Juan's birthday dinner in Ciudad Juarez, Mexico. Norma Gonzalez De Santos identified the man as Appellant in open court. She also testified that she subsequently identified Appellant as the man she saw on the street that day in a police photo lineup, although an El Paso Police Department detective denied that she ever made an affirmative identification. Gonzalez De Santos testified that Appellant approached her and her husband while holding a gun. He then pointed the gun at Norma before aiming it at her husband and firing three rounds. Appellant then aimed the gun back at Norma after her husband fell to the ground before lowering the gun and running away.

2

Guadalupe and Carmen De La Pena testified that they both heard gunshots, and that when they looked outside, they saw a woman screaming in the street and a man lying on the ground. Juan Santos was rushed to a nearby hospital, where he died of his injuries.

### *Attack on SUV Near Armijo Park*

Earlier that same evening, Jose Mendoza and Ernesto Vargas had been spending time with friends Roberto Rodriguez and Omar Muniz at Armijo Park, located on Seventh Street. Mendoza testified that at one point, a man he later identified as Appellant came up to him at the park, stood beside him without saying anything, and then left. At some point between 9 p.m. and 9:30 p.m., Mendoza and Vargas got into Mendoza's car and talked for a while before deciding to leave Armijo Park. Mendoza testified[1] that as he drove away from Armijo Park on Florence Street, he saw Appellant a second time walking down the street. Mendoza slowed down, thinking that Appellant wanted to cross the street. Appellant then pointed a gun at the SUV and without warning, fired two shots. Mendoza sped off, parked the SUV a few blocks away, and then decided to return to Armijo Park to see if his friends were okay.

### *Shooter's Flight through Segundo Barrio*

Carlos Enciso testified that he was playing basketball with a friend at Armijo Park. Enciso further testified he saw a man with a gun nearby. The man then pointed the gun at Enciso and said, "don't get too close to me. If you come close, I'm going to hit you." Then Appellant ran toward some apartments, at some point throwing the gun away between Florence and Campbell Streets. Enciso and some friends chased after Appellant in a white van in order to find out where he was going. Enciso did not contact police until three days later. Enciso repeatedly gave inconsistent testimony about whether only Appellant had a gun, or whether someone else in

---

[1] Although Ernesto Vargas was listed as the complaining witness in Count IV, Vargas did not testify at the trial because he was on active duty with the United State military in Kuwait.

the van had a gun as well. Enciso admitted to taking three separate medications to help him concentrate.

### *Appellant's Arrest and Interrogation*

Following his arrest, Appellant gave a video recorded statement to police. The interrogation takes place entirely in Spanish. The trial court admitted, without objection, a Spanish-language transcript of the interrogation with a side-by-side English translation, and instructed the jury to use the video to judge Appellant's demeanor and the English translation transcript to assess the content of his testimony. In the video, following a waiver of his *Miranda* rights, Appellant confessed to shooting a man who was walking with a woman near Armijo Park. Appellant stated that he crossed into the United States from Ciudad Juarez, Mexico, using the Santa Fe Street Bridge, which connects Juarez directly to Downtown El Paso. He was armed with a .40 caliber black Taurus handgun he purchased for 1,000 pesos in Juarez that was apparently not detected by customs agents when he crossed the international border. Appellant explained to officers that his friend had been killed in Juarez, and Appellant decided he wanted to know what it felt like to shoot somebody. He also denied being intoxicated at the time of the interrogation, stating that he "sobered up."

### *Police Investigation and Forensics*

During the course of the investigation, police spoke with Jorge Araiza, who resided on Ochoa Street nearby. Araiza knew Appellant because Araiza's uncle raised Appellant as an adoptive son in Juarez. Araiza testified twice at trial. During his initial testimony, which he gave in English, Araiza initially denied telling police that Appellant admitted to shooting a man on the street when confronted with a written copy of his statement to police. Later, Ariaza returned to the stand with appointed counsel and, speaking through a translator in Spanish,

4

confirmed that he did tell police Appellant had approached him after the shootings and confessed to being the shooter. According to Araiza, Appellant said that after the shootings, he had changed his clothes, urinated on his hands to get rid of gunshot residue, and thrown the gun away. Araiza testified that he did not see Appellant on a regular basis, but that he knew Appellant regularly used alcohol, marijuana, and Rohypnol. Araiza also testified that he was worried he would be charged with perjury if he did not change his testimony.

Detective Deanne Hicks testified that police were initially looking for a white SUV because a witness had complained that four individuals in an SUV had stopped him on the streets and asked among themselves if "it was him" before driving off. The witness also thought he may have seen a long gun in the car and heard the sound of a shotgun being racked. However, Detective Hicks testified that once Araiza came forward with information about Appellant, police stopped looking for the white SUV and instead focuses solely on Appellant as a suspect in the murder.

Forensic experts testified that all bullets collected from the area by investigators were fired from the same gun. Fingerprints found on the cartridge casings did not contain enough ridge detail to allow for a positive identification. Investigators never retrieved the gun.

### PROCEDURAL HISTORY

The jury returned guilty verdicts on all six counts and assessed punishment at 25 years' imprisonment for the murder charge in Count I, 10 years' for Count II, 5 years' each for Counts III and IV, 2 years' for Count V, and 10 years" for Count VI. The trial court entered judgment on the verdict and ordered Appellant to pay $200,000.00 in restitution to Norma Gonzalez De Santos and to Juan Santos' son, Juan Jose. Montejano appealed.

### DISCUSSION

5

In six issues, Appellant challenges the legal sufficiency of his convictions for murder and aggravated assault. We find that the jury's verdict rested on legally sufficient evidence.

### *Standard of Review*

"In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *see also Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We determine whether the inferences necessary to sustain conviction are reasonable after reviewing "the combined and cumulative force of all the evidence" -- direct or circumstantial, properly or improperly admitted -- as "viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). Where evidence supports conflicting inferences, we presume the jury resolved any conflicts in favor of the State. *Id*. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. "We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact." *Saucedo v. State*, No. 08-07-00147-CR, 2009 WL 1119596, at *3 (Tex.App.--El Paso Apr. 23, 2990, no pet.)(not designated for publication).

In a case such as this one in which video evidence is present, we may review the "'indisputable visual evidence' contained in [the] videotape" *de novo*. *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013)*, citing Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App. 2000)(appellate court need not defer to fact finder where "indisputable visual

evidence contradicting" testimony appears in record). However, "the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation." *Duran*, 396 S.W.3d at 570-71.

### *Murder of Juan Santos*

In Issue One, Appellant contends that the State failed to establish that Appellant murdered Juan Santos by legally sufficient evidence. Specifically, he argues that a rational jury could not find him guilty beyond a reasonable doubt because (1) Appellant was intoxicated in the interrogation video shown to the jury, making his statements unreliable; (2) his statements to police did not lead them to find the murder weapon, showing his confession was not credible; and (3) police failed to follow up on other potential leads, including a lead on a white truck spotted in the area, after Araiza told police Montejano had confessed to the shooting. The State counters that Appellant's confession was credible and its veracity a matter for the jury, but it maintains that even apart from his confession and purported admission of guilt to Araiza, the evidence is legally sufficient because eyewitness Norma Gonzalez De Santos identified Appellant as her husband's shooter. We agree.

### Elements of Murder

We measure the legal sufficiency of a conviction against a "hypothetically correct" jury charge setting out all the elements of a certain crime. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). As is relevant to this case, a person commits murder if he (1) "intentionally or knowingly causes the death of an individual," or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual . . . ." TEX.PENAL CODE ANN. § 19.02(b)(West 2011).

7

**Analysis**

Although we take the evidence presented in the aggregate and not piecemeal, three particular pieces of evidence adduced at trial support the legal sufficiency of the jury's verdict. First, during interrogation, Appellant confessed to shooting a man on the street because he wanted to know what it felt like. These statements clearly evince that Appellant, by shooting Santos, intended to either intentionally or knowingly cause his death, or else establish that he intended to engage in conduct clearly dangerous to human life that led to Santos' death.

Appellant's counsel argues that Appellant's statement to police is not credible because it contains inconsistencies and did not lead police to find the gun. It is the province of the jury to weigh the testimony and resolve such conflicts. We note that during his confession, Appellant used a great deal of detail in describing the gun as an automatic Taurus he purchased in Juarez for 1,000 pesos, he admitted his presence in the general vicinity, and he confessed to approaching a man and a woman in Segundo Barrio and shooting the man. Those factors militate in favor of viewing the jury's verdict as rational. Appellant's counsel further maintains that Appellant's confession is unreliable because Araiza testified he believed Appellant was drunk and high on Rohypnol at the time of the shootings, and the video evidence shows Appellant was still intoxicated at the time of the interrogation. Although a copy of Appellant's interrogation video appears in the record, the video evidence on that point is ambiguous. Appellant behaves somewhat strangely toward the beginning of the video, but when asked directly if he is intoxicated during the interrogation, Appellant answers "*No. Ya se me bajó.*" [Emphasis added]. In English, as the State's transcript states, "No, I sobered up." Given that the video evidence is equivocal on the issue of intoxication, we defer to the jury in determining the video evidence's weight and veracity. *See Duran*, 396 S.W.3d at 570-71 (deference to jury in

video assessments unless video evidence is incontrovertible). We cannot say that if the jury believed Appellant's confession, their choice to convict him of murder would be an irrational decision unsupported by evidence beyond a reasonable doubt.

Second, apart from Appellant's confession to police, the jury could have believed Araiza's testimony that Appellant admitted to shooting a man. Although Araiza gave starkly contradictory testimony at trial, the jury could have believed that Araiza told the full truth when he was recalled to the stand due to his fear of being charged with perjury. Appellant's confession as relayed through Araiza also weighs in favor of the verdict's legal sufficiency.

Finally barring Appellant's confession to police and Araiza's testimony, Norma Gonzalez De Santos identified Appellant as her husband's shooter in open court. Appellant correctly points out that although Gonzalez De Santos testified that she identified Appellant in a police photo line-up, Detective Pennington unequivocally stated that Gonzalez De Santos failed to identify Appellant in a photo line-up immediately after the shooting. It was the jury's province to weigh this evidence and resolve the conflict between Gonzalez De Santos' testimony and Detective Pennington's testimony, as well as the apparent inconsistencies within Gonzalez De Santos' own identification. Given Gonzalez De Santos' identification of Appellant in open court, we cannot say the jury's verdict was irrational, since the testimony of a single eyewitness, if believed by the jury, may constitute legally sufficient evidence supporting a conviction. *Jackson v. State*, No. 08-09-00212-CR, 2011 WL 63109, at *4 (Tex.App.—El Paso Jan. 5, 2011, no pet.)(not designated for publication).

Appellant complains that police did not fully investigate reports of the white SUV or van in the area at the time and argues that the presence of possible other shooters vitiates proof of Appellant's guilt beyond a reasonable doubt. However, the report of the white van in the area is

consistent with Enciso's testimony that he and friends searched for Appellant in a white van after the shootings. Even considering this alternate theory, taking the force and weight of all record evidence in the aggregate and resolving conflicts in the verdict's favor, we cannot say that the jury's murder verdict was legally insufficient under the *Jackson* standard.

Issue One is overruled.

### *Aggravated Assaults*

In Issues Two through Six, Appellant maintains that the evidence is legally insufficient to show he committed aggravated assault against Norma Gonzalez De Santos, Jose Mendoza, Ernesto Rodriguez Vargas, Carlos Enciso, and Luis Vera, respectively. Specifically, Appellant asserts that the State failed to offer sufficient evidence that each named party actually perceived a threat of imminent bodily harm. We disagree.

### Elements of Aggravated Assault

A person commits aggravated assault by threat if he or she (1) intentionally or knowingly threatens another with imminent bodily injury, and (2) used or exhibited a deadly weapon during the commission of the assault. *See* TEX.PENAL CODE ANN. §§ 22.01(a), 22.02(a)(2)(West 2011 & West Supp. 2014).

### Analysis

Appellant contends that the aggravated assault by threat conviction counts were legally insufficient vis-à-vis the above-named individuals because the State failed to prove each of these individuals actually, explicitly testified that they perceived a threat. However, a victim's subjective perception of the threat is not dispositive in an aggravated assault by threat case. Instead, the operative question is whether the defendant's conduct would be perceived as objectively threatening under the circumstances. *See Olivas v. State*, 203 S.W.3d 341, 346-47

10

(Tex.Crim.App. 2006). In *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App. 1984), the Court of Criminal Appeals held that there was legally insufficient evidence of a threat in an aggravated assault by threat case where the perpetrator stabbed the victim in the back of the head because the victim had not perceived a threat. However, as the court in *Olivas* noted, *McGowan* is a case that is limited to its own facts. *See* 203 S.W.3d at 346-47. In *McGowan*, any person stabbed from behind under those circumstances would not perceive a threat, rendering that element of the crime legally insufficient under the circumstances. *Id*.

The case at bar is easily distinguishable from *McGowan*. All witnesses testified that Appellant either deliberately aimed a gun at them or fired or attempted to fire the gun at them. Numerous cases from this Court and our sister courts have held that display of a deadly weapon, the deliberate aiming of a gun at a person, or the firing of a deadly weapon may all be perceived as threatening under certain circumstances. *See, e.g., Danko v. State*, No. 02-09-00386-CR, 2011 WL 167071, at *3 (Tex.App.--Fort Worth Jan. 20, 2011, pet. ref'd); *Sosa v. State*, 177 S.W.3d 227, 231 (Tex.App.--Houston [1st Dist.] 2005, no pet.); *Fagan v. State*, 362 S.W.3d 796, 799 (Tex.App.—Texarkana 2012, pet. ref'd).

As demonstrated below, the evidence was legally sufficient to show Appellant committed aggravated assault by threat against each victim.

*Count Two: Norma Gonzales De Santos*

Norma Gonzalez De Santos testified that Appellant pointed the gun at her, then aimed at her husband instead and shot him several times before re-aiming the gun back at her. As we previously stated with regard to purported conflicts in her testimony regarding whether she identified Appellant in a police photo line-up, it was the province of the jury to resolve those conflicts and to decide how to weigh that evidence in relation to her identification of Appellant

11

in open court. Based on the evidence presented, we believe a rational jury could have found that Appellant committed aggravated assault by threat against Gonzalez De Santos beyond a reasonable doubt.

Issue Two is overruled.

*Count Three: Jose Mendoza*

Jose Mendoza testified that while he and his friend Ernesto were in Mendoza's SUV, they witnessed Appellant step out in front of the vehicle. Thinking that he was attempting to cross the street, Mendoza slowed down. Appellant then stepped up to the window and shot twice. A rational jury could have believed the act of firing a weapon was objectively threatening.

Issue Three is overruled.

*Count Four: Ernesto Rodriguez Vargas*

Vargas did not testify at trial, since he was deployed to Kuwait with the U.S. military. Appellant maintains that no evidence in the record exists to show whether Vargas was awake or asleep in the SUV at the time of the shooting. Since consciousness would affect a person's ability to objectively perceive a threat, and since the State had the burden of proof, Appellant contends that no proof beyond a reasonable doubt exists to show Vargas' ability to perceive a threat.

Jose Mendoza testified that after he and his friends decided to leave Armijo Park, Mendoza and Vargas got into the SUV and talked for a while before eventually driving off. The shooting occurred a short time later. Based on this evidence, a rational jury could infer that Vargas was still conscious at the time of the shooting sufficient to perceive the objectively threatening conduct and thus find that the aggravated assault by threat was consummated.

12

Issue Four is overruled.

*Count Five: Carlos Enciso*

The record testimony with regard to Enciso shows that Appellant pointed a gun at Enciso, then ran away. Appellant argues that Enciso could not have felt threatened by Appellant's conduct because Enciso chased after him following their encounter. Again, subjective perception of the threat is not determinative; rather conduct that a reasonable person would consider objectively threatening under the same circumstances establishes the "threat" element in an aggravated assault by threat case. The offense is consummated by engaging in threatening conduct without regard to any specific result. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex.Crim.App. 2008). Enciso's behavior following the crime's consummation is irrelevant to the question of whether Appellant committed that crime. *Id*.

Issue Five is overruled.

*Count Six: Luis Vera*

Luis Vera testified that Appellant pointed the gun at him and "shot three times, but the bullets didn't come out. I could just hear the click, click." Appellant then became upset and said, "Fuck, it didn't come out." Assuming as we must that the jury believed Vera's testimony, Appellant's conduct would be objectively perceived as threatening under the circumstances by any reasonable person.

Appellant maintains that the jury could not have reasonably credited Vera's testimony because the incident occurred at nighttime, Vera misidentified the type of gun used, and because Vera did not immediately report the incident to police. Given the proximity of Vera in relation to Appellant and the stressful circumstances, these factors do not stand as a bar rendering Appellant's testimony incredible or the jury's inferences derived therefrom irrational. The

13

evidence is legally sufficient as to the aggravated assault against Vera.

Issue Six is overruled.

### *Restitution*

Although Appellant failed to object in the trial court or bring the issue to this Court's attention in his brief, the State has requested in its brief that we vacate the trial court's $200,000.00 restitution judgment rendered against Appellant on Count I of the indictment, i.e. the murder charge. The State reasons that the trial court lacked the statutory authority to grant restitution to Juan Santos' wife Norma and his son Juan Jose because there is no factual basis in the record to support the restitution award, and because they are not "victims" eligible for restitution under TEX.CODE CRIM.PROC. ANN. art. 56.01 (West Supp. 2014).

We agree with the State's assessment that under the statute as it is currently written, Santos' wife and son would not qualify as "victims" eligible for restitution, despite the emotional hardship and pain they undoubtedly experienced from the death of their loved one. "In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense . . . ." TEX.CODE CRIM.PROC.ANN. art. 42.037 (West Supp. 2014). "The amount of restitution must be just, and it must have a factual basis within the loss of the *victim*." *Campbell v. State*, 5 S.W.3d 693, 696 (Tex.Crim.App. 1999)[Emphasis added]. A victim as contemplated by statute is the person against whom the criminal conduct as charged in the indictment was committed. *See* TEX.CODE CRIM.PROC.ANN. art. 56.01(a victim is "a person who is the victim of sexual assault, kidnapping, aggravated robbery, trafficking of persons or injury to a child, elderly individual, or disabled individual, or who has suffered bodily injury or death as a result of the criminal conduct of another").

14

In this case, the victim of the murder entitled to restitution was Juan Santos, since he suffered the direct consequences of the criminal conduct as charged in Count I of the indictment. *Id*. As a technical matter, the trial court should have ordered restitution paid to Juan Santos' estate before his wife and son could claim the proceeds through probate, assuming they were legal heirs who were so entitled under his will or through intestacy. *See Lemos v. State*, 27 S.W.3d 42, 49 (Tex.App.--San Antonio 2000, pet. ref'd). Because the trial court failed to follow this procedural step and instead awarded restitution directly to Norma and Juan Jose, who were not the direct "victims" of the conduct charged in the murder count, the trial court's restitution order constituted legal error. We appreciate the State's candor in bringing this issue to the Court's attention.

However, this Court will not reform the trial court's judgment to eliminate the award of restitution. As with other legal errors, failure to object to a restitution award to the family member of a crime victim when the family member is not a "victim" as defined by statute results in waiver of the complaint on appeal. *See id*. at 47 (where trial court ordered restitution of ambulance and treatment costs for aggravated robbery victim's wife who experienced shock after seeing her husband mortally wounded, appellant waived valid basis for deletion of that portion of restitution by failing to object). Because Appellant failed to object to the award, error has been waived, and this Court cannot alter the restitution judgment. *Id*. Thus, the trial court's order granting Norma Gonzalez De Santos and Juan Jose Santos will stand as-is.

**CONCLUSION**

Appellant's Issues One through Six and the State's cross-point on restitution are overruled. The judgment of the trial court is affirmed.

15

September 17, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

(Do Not Publish)