

**NUMBER 13-17-00334-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

CATHERINE GUSTAVSON,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.

**On appeal from the 105th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION
**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

By two issues, appellant Catherine Gustavson challenges her conviction for evading arrest or detention with a vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04 (West, Westlaw through 2017 1st C.S.). Gustavson alleges: (1) the evidence was insufficient to support the conviction and (2) her trial counsel was ineffective. We affirm.

I.     BACKGROUND

On June 19, 2016, as Precinct One Deputy Constable Raul Gamez was responding to a radio call for an assault,[1] he witnessed a vehicle, driven by Gustavson, pass him on Leopard Street in Corpus Christi.[2]  Deputy Gamez stated that his vehicle stopped next to Gustavson's at a traffic signal and he spoke to her through their open windows.  Deputy Gamez asked Gustavson if she knew what the speed limit was for the area, informed her of the proper speed limit, and asked Gustavson to slow down.  Deputy Gamez stated that Gustavson started questioning his authority by asking what "gives me the right to tell her. . . what speed limit to go, so just questioning my authority as a—as a peace officer."  As Gustavson started raising her voice, Deputy Gamez asked her to pull over.  According to Deput Gamez, Gustavson said no and "took off" as the traffic light turned green.

Deputy Gamez stated he pulled behind Gustavson with his overhead lights activated and she refused to pull over and continued driving to the Safari Inn.  Deputy Gamez testified that the Safari Inn is about two to three blocks from the area he first encountered Gustavson, but there were plenty of places where Gustavson could have safely pulled over before then.  Gustavson seemed upset and only came to a stop upon reaching the back of the Safari Inn parking lot.  Deputy Gamez testified that he would have pulled Gustavson over for speeding, but then she evaded.

Gustavson also testified.  She admitted that she asked Deputy Gamez if he was "even a police officer" because in her native state of Nevada, constables are more like

---

[1]  Deputy Gamez testified that at the time of the incident, he was working in an off-duty capacity for the Regional Transportation Authority in Corpus Christi but driving his marked constable vehicle and was dressed in his constable uniform.

[2]  Deputy Gamez estimated that Gustavson was going around 50–55 miles per hour in a 35 mile per hour zone.  Deputy Gamez also admitted he was driving around 45 miles per hour in excess of the speed limit, but Gustavson passed him.

security guards. Gustavson stated that she asked to see his badge and that Deputy Gamez did not ask her to pull over on Nueces Bay, the cross-street to Leopard where Deputy Gamez first encountered Gustavson. She also stated that she was unsure if Deputy Gamez told her to pull over. Gustavson knew Deputy Gamez was behind her when she left the traffic light and agreed he did turn on his overhead lights. She also agreed that she could have turned into a nearby parking lot, but wanted to go to the Safari Inn because she was staying there, felt safe, and wanted witnesses.

The jury found Gustavson guilty of evading arrest or detention. *See id.* The trial court sentenced her to three years' imprisonment in the Texas Department of Criminal Justice–Institutional Division, but probated the sentence for two years. This appeal followed.

## II.   EVIDENCE WAS SUFFICIENT

By her first issue, Gustavson argues the evidence was insufficient to support her conviction for evading arrest.

### A.   Standard of Review

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In order to reverse a conviction based on insufficient evidence, Gustavson must show that no rational jury could have found all the elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902. The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and a reviewing court is not to

3

substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).  When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record.  *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Id.*

**B.    Applicable Law and Discussion**

Under a hypothetically correct jury charge, the elements of evading arrest or detention are:  a person commits an offense if she intentionally flees from a person she knows is a peace officer attempting lawfully to arrest or detain her.  TEX. PENAL CODE ANN. § 38.04.  The evidence presented by the State showed that Deputy Gamez was in uniform and driving a vehicle that displayed the word "constable" on it.  Gustavson herself testified that she drove away from the stop light and saw Deputy Gamez's overhead lights on, but chose not to stop until she reached the Safari Inn, which was around a half of a mile away from where she initially encountered Deputy Gamez.  Although Gustavson stated that she did not believe Deputy Gamez was a peace officer, that he never told her to pull over, and that although she saw the overhead lights, she did not pull over until she felt safe, the jury

4

was inclined to believe the State had proven all the required elements of evading arrest or detention with a vehicle. *See id.*; *see also Brooks*, 323 S.W.3d at 902.

Additionally, Gustavson argues that in order to be arrested for evading arrest, she must have known a peace officer was trying to "arrest" her. However, the penal code authorizes a charge of evading arrest *or* detention. *See* TEX. PENAL CODE ANN. § 38.04 (emphasis added). Deputy Gamez stated that he would have pulled Gustavson over for speeding, in violation of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.351, .352 (West, Westlaw through 2017 1st C.S.). "The lawfulness of the attempted detention is an element of the offense that must be proven by the State." *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Jenkins v. State*, 454 S.W.3d 712, 714 (Tex. App.—Corpus Christi 2015, no pet.) (stating that observations by a police officer supported a jury's conclusion that there was a lawful reason to stop the defendant's vehicle). Deputy Gamez testified that he got behind Gustavson's vehicle and turned on his lights after she was seen speeding, questioned his authority, and then refused to pull over. Therefore, the jury could have inferred that Deputy Gamez was attempting to detain Gustavson based on her speeding.[3]

Because we do not substitute our judgment for the jury, we find there was sufficient evidence to support Gustavson's conviction and overrule her first issue. *See Montgomery*, 369 S.W.3d at 192.

---

[3] Gustavson also claims she was stopped in violation of her First Amendment rights for questioning Deputy Gamez. *See* U.S. CONST. amend I. However, Deputy Gamez stated he attempted to detain her for speeding, which is a valid reason for a traffic stop. *See State v. Duran*, 396 S.W.3d 563, 569–70 (Tex. Crim. App. 2013) (stating that courts use an objective standard to support a finding of reasonable suspicion or probable cause to determine if a stop is valid). Additionally, Gustavson did not raise the claim regarding the violation of her First Amendment rights in the trial court and therefore her complaint now is waived. *See* TEX. R. APP. P. 33.1(a).

### III. COUNSEL WAS EFFECTIVE

By her second issue, Gustavson asserts that her trial counsel was ineffective for failing to: (1) argue insufficiency of the evidence to the trial court; and (2) present evidence of the actual distance Gustavson traveled before stopping.

#### A. Standard of Review and Applicable Law

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the heavy burden of *Strickland v. Washington*. 466 U.S. 668 (1984). Under *Strickland*, the defendant must show by a preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc) (citing *Strickland*, 466 U.S. at 694); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Generally, if the record is silent as to why trial counsel engaged in the action being challenged as ineffective, there is a "strong presumption" that counsel's conduct was the result of sound trial strategy, falling within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Id.* at 814.

A "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." *Strickland*, 466 U.S. at 690. To prevent unfairly assessing attorney conduct in hindsight, "there is a presumption that the trial attorney's performance conformed to prevailing professional norms at the time of trial—i.e., the challenged action 'might be considered sound trial strategy.'" *Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014) (quoting *Strickland*, 466 U.S. at 689). Typically, when counsel's motivations for tactical decisions are absent from the record, the appellant is unable to overcome the "strong presumption that counsel's conduct was reasonable." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "A vague inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent." *Bone*, 77 S.W.3d at 836.

We look to "the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson*, 9 S.W.3d at 813. If the appellant fails to prove one prong of the test, we need not reach the other prong. *See Strickland*, 466 U.S. at 697; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In evaluating the first prong of *Strickland*, counsel's competence is presumed and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action could not have been based on sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.*

### B. Discussion

Gustavson must show that her trial counsel's representation fell below an objective standard of reasonableness or there is a reasonable probability that the result of the

7

proceeding would have been different but for the attorney's deficient performance. *See Hernandez*, 726 S.W.2d at 55. Here, neither of allegations amount to ineffective assistance.

Gustavson alleges her trial counsel should have presented evidence that the distance she evaded was shorter than what was testified to during trial. However, the distance she evaded was not a required element of the State's case. Just the mere fact she admitted to seeing Deputy Gamez's overhead lights attempting to pull her over and continued to drive was enough to establish the elements necessary for evading arrest or detention. *See* TEX. PENAL CODE ANN. § 38.04. Gustavson does not explain how the introduction of such evidence fell below a "objective standard of reasonableness" or would have changed the outcome of the trial. *See Hernandez*, 726 S.W.2d at 55.

Gustavson also states her trial counsel should have notified the trial court of the lack of sufficiency of the State's evidence through a motion for directed or instructed verdict or through his closing argument. We note that "appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Id.* Rarely will the trial record contain sufficient information to permit a reviewing court fairly evaluate the merits of such a serious allegation. *Id.*

"Under *Strickland*, the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Id.* at

8

836. "From this trial record, one could conclude that there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not." *Id.* "Under our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf. His counsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent." *Id.*

Without a hearing where trial counsel could explain or defend his actions, we are not inclined to find his representation ineffective. Therefore, we overrule Gustavson's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
5th day of July, 2018.