

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SALVADOR GARCIA, | § | No. 08-19-00176-CR |
| Appellant, | § | Appeal from the |
| v. | § | 112th Judicial District Court |
| THE STATE OF TEXAS, | § | of Pecos County, Texas |
| Relator. | § | (TC# 3539) |

**O P I N I O N**

A jury convicted Appellant, Salvador Garcia, of possession of a controlled substance, and sentenced him to ten years' imprisonment.[1] He appeals the trial court's denial of his motion to suppress the evidence discovered after law enforcement searched his vehicle. Appellant consented to the search. But here he claims that his consent came after the law enforcement officer had already issued a warning citation and the traffic stop was completed. He therefore urges that the search was illegal. We conclude otherwise and affirm the trial court's judgment.

---

[1] The State filed a pretrial notice to enhance Appellant's punishment to a second- or third-degree felony, pursuant to TEX.PENAL CODE ANN. § 12.425, based upon Appellant's prior convictions for criminal sexual conduct, possession of a stolen vehicle, escape from a peace officer, and two prior convictions for possession of a controlled substance. The trial court instructed the jury that, if it found the enhancements true, it could sentence Appellant to a term of imprisonment for a second-degree felony.

1

# I. BACKGROUND

On December 18, 2012, Appellant was traveling on Interstate 10, in Pecos County when law enforcement initiated a traffic stop.[2] In a pretrial motion to suppress, Appellant did not dispute that law enforcement had reasonable suspicion to initiate that traffic stop based on several apparent traffic violations. He also did not dispute that he was driving on a suspended New Mexico driver's license at the time. Rather, he argued that the traffic stop was concluded when the officer decided to issue a warning citation, and any search conducted after this point was illegal.

## A. Sergeant Rangel's Testimony

At the suppression hearing, Texas DPS Sergeant Daniel Rangel testified that he encountered Appellant's black pickup truck on I-10 pulling a loaded flatbed trailer with a red pickup truck on top of it. Sergeant Rangel initiated a traffic stop after he observed Appellant illegally drive on the improved shoulder of the interstate and because the license plate on the trailer was obscured. Once he initiated the stop, Sergeant Rangel also discovered that the license plate for the black pickup truck was illegally obscured, because it was placed on the heavily tinted rear window.

Sergeant Rangel noted that Appellant seemed a bit uneasy and reported feeling tired. In addition, Appellant's hands and body trembled as he provided a state identification instead of the requested driver's license, and he indicated that the black pickup truck belonged to a friend.

Appellant initially led Sergeant Rangel to believe that he recently purchased the red pickup truck in Sullivan City, Texas, and was towing it back to his home in Albuquerque. After the officer commented that the red truck had a New Mexico registration, Appellant provided a confusing

---

[2] Appellant committed the offense in December 2012, and the State indicted him in June 2015. The trial court issued a capias and rescinded Appellant's bond after he left the courthouse during a recess of his trial in 2018, which continued in his absence. Law enforcement arrested Appellant in New Mexico in May 2019, and he was returned to Texas where the trial court pronounced his sentence.

explanation: that he previously towed the red truck from Albuquerque to Sullivan City, and it broke down.[3] He left the truck in Sullivan City, and had just returned to Texas to tow the truck back to Albuquerque. Appellant also stated that he traveled the back roads throughout the night and did not drive through San Antonio. Through his training and experience, Sergeant Rangel learned that people involved in criminal activity commonly circumvent the major highway border checkpoints and travel at night so that they encounter tired border patrol agents.

Appellant's wife, a passenger in the truck, offered a different explanation about the red pickup in that it belonged to Appellant's friend. These inconsistent stories caused Sergeant Rangel to further suspect criminal activity.

Sergeant Rangel informed Appellant that he would issue a warning citation for the traffic violations. The officer thereafter returned to his patrol unit to draft the citation and run a records check on Appellant's driver's license, criminal history, and the vehicle registrations. From that records check, he learned that Appellant's driver's license was suspended in New Mexico, which gave Sergeant Rangel probable cause to arrest. Appellant also had a multistate criminal history that included convictions for drug charges, evading arrest, and assault.

While Sergeant Rangel performed the records check, Appellant stood outside and continued to display uneasy behavior even though he was told he would only receive a warning citation. During the thousands of traffic stops that Sergeant Rangel had conducted, a driver's nervousness usually decreased when he received a warning. Appellant's behavior thus caused the officer to question if he was involved other illegal activity. Sergeant Rangel called for assistance because Appellant committed an arrestable offense, he had prior convictions for assault and crimes

---

[3] Appellant claimed he towed the truck from Albuquerque to Sullivan City a month prior. Sergeant Rangel questioned how a vehicle that was not driven could break down, and why Appellant did not tow the truck back to Albuquerque when he traveled home the month prior.

against officers, and Appellant's wife and child were present. The officer thereafter issued Appellant the warning citation. Appellant's nervousness increased at this point and he began talking excessively, stating that his behavior was caused by Attention Deficit Hyperactivity Disorder and the medication he was prescribed. Appellant then stated that he had not yet been "given" medication for the condition.

After Appellant signed the warning, Sergeant Rangel explained that another duty of law enforcement involved looking for illegal firearms, stolen property, or drugs, in order to ensure that nothing illegal was afoot. Appellant responded that he was not in possession of such contraband. Sergeant Rangel requested permission to search the vehicles, and Appellant consented.

Sergeant Rangel first searched the red pickup truck. As soon as he opened the driver's side door, he discovered a small clear plastic baggie that contained what appeared to be cocaine. He arrested Appellant for possession of a controlled substance after discovering the baggie and conducted the remainder of the vehicle searches at the Fort Stockton station. The State introduced a DVD recording of Sergeant Rangel's dash cam video of the traffic stop and roadside search of Appellant's vehicle at the suppression hearing, which as we explain below, corroborated Sergeant Rangel's testimony.

Appellant's trial counsel argued that the traffic stop "was over" when Sergeant Rangel decided to issue Appellant a warning citation. And because Appellant's "license had been cleared" at the time Sergeant Rangel requested consent, the vehicle search violated Appellant's Fourth Amendment rights. The State responded that a traffic stop is not completed before law enforcement runs the defendant's license and criminal history, which Sergeant Rangel had not done at the time he indicated that he would issue Appellant a warning citation. The State contended

4

that the traffic stop was reasonably extended after Sergeant Rangel ran a background check and learned that Appellant was driving on a suspended license.

### B. Trial Court's Findings of Fact and Conclusions of Law

After watching the dash cam video, the trial court made explicit findings of fact as to the length of time Sergeant Rangel took to conduct the records check, issue the warning citation, and initiate the discussion of possible contraband with Appellant. The court explicitly found that Sergeant Rangel initiated the traffic stop because Appellant's two left tires swerved into the left-hand shoulder and the license plate was partially obscured, and noted that the dash cam video depicted these traffic violations. The trial court found that the duration of the detention was reasonable because Sergeant Rangel only continued the traffic stop upon learning that Appellant's driver's license was suspended, and this new information provided a reason to continue the detention. Based on its findings, the trial court denied the motion.

## II. ISSUE ON APPEAL

Appellant argues that the trial court erred by denying his motion to suppress, because Sergeant Rangel requested consent to search after he issued the warning citation and the traffic stop had concluded. The State responds that Sergeant Rangel did not unreasonably detain Appellant, because the totality of circumstances demonstrated a reasonable suspicion that Appellant was involved in criminal activity. Specifically, Appellant provided a state identification rather than the requested driver's license, his nervousness did not lessen when he learned that he would receive only a warning citation, and his reasons for travel and travel route were odd. Sergeant Rangel also had probable cause to arrest Appellant for driving on a suspended license at the time he requested consent to search. We agree and conclude that Appellant's argument does not warrant relief.

5

**A. Standard of Review**

Appellate courts review a trial court's ruling on a motion to suppress under a bifurcated standard. *See State v. Arellano*, 600 S.W.3d 53, 57 (Tex.Crim.App. 2020). A trial court's findings of historical fact are afforded almost total deference if they are reasonably supported by the record. *See id.*, *citing Sims v. State*, 569 S.W.3d 634, 640 (Tex.Crim.App. 2019). The same deferential standard of review is applied to a trial court's determination of fact that is based upon a video recording admitted at the suppression hearing. *See State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). A reviewing court must also defer to the trial court's factual findings concerning whether a witness actually saw what was depicted on a video. *See id.* at 571.[4] A trial court's application of the law of search and seizure is reviewed de novo. *See id.*

When the trial court makes findings of fact, a reviewing court determines whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *See Abney v. State*, 394 S.W.3d 542, 547 (Tex.Crim.App. 2013). The winning side is afforded the "strongest legitimate view of the evidence," along with all reasonable inferences that can be derived from it. *Duran*, 396 S.W.3d at 570, *quoting State v. Weaver*, 349 S.W.3d 521, 525 (Tex.Crim.App. 2011). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000) (en banc).

---

[4] Appellate courts may review "indisputable visual evidence" contained within a video recording de novo, assuming the video does not pivot on an evaluation of credibility and demeanor. *See Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App. 2000) (declining to afford almost total deference to trial court finding of defendant's consent to be searched when video showed that the defendant was surrounded by four officers who had him backed up with his hands against the hood of his car and officer was reaching for defendant's pants). Appellant does not argue that the dash cam video offers indisputable visual evidence that Sergeant Rangel did not have reasonable suspicion to detain him, or that this Court should review the recording under a de novo standard of review.

6

**B. The Seizure of a Traffic Stop**

The Supreme Court has recognized that "[a] seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 343, 354 (2015). Beyond determining whether to issue a traffic citation, an officer's mission during a traffic stop includes "ordinary inquiries incident to [the traffic] stop." *Id.* at 355, *quoting Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Such inquiries typically involve determining whether there are outstanding warrants against the driver, running a records check on the driver's license, and inspecting the vehicle's registration and proof of insurance. *See id.* (noting that these checks serve the same purpose as enforcement of the traffic code by ensuring vehicles are operated safely), *citing Delaware v. Prouse*, 440 U.S. 648, 658-59 (1979).

Because traffic stops are "especially fraught with danger to police officers," law enforcement may order a driver to exit a vehicle lawfully detained for a traffic violation without violating the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 330-31 (2009), *citing Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam). The officer may also pat down the driver if the officer has reasonable suspicion that the driver might be armed and dangerous. *See id.* at 331-32, *citing Mimms*, 434 U.S. at 112; *Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998).

"Reasonable suspicion to detain a person exists when a police officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'" *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex.Crim.App. 2017), *quoting Furr v. State*, 499 S.W.3d 872, 878 (Tex.Crim.App. 2016). A reasonable suspicion is more than a mere hunch; the standard requires considerably less proof of wrongdoing than a preponderance of the

7

evidence, and obviously less than is necessary for probable cause. *See Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020) (noting that reasonable suspicion falls considerably short of 51% accuracy), *citing Navarette v. California*, 572 U.S. 393, 397 (2014). This standard disregards the actual subjective motive of the arresting officer and instead determines if there was an objectively justifiable basis for the detention. *See Ramirez-Tamayo*, 537 S.W.3d at 36; *Whren v. United States*, 517 U.S. 806, 809-810 (1996). Because the law prohibits only "unreasonable searches and seizures," an officer's objectively reasonable mistake of fact or law is tolerated. *Heien v. North Carolina*, 574 U.S. 54, 57, 67 (2014); *see United States v. Sharpe*, 470 U.S. 675, 682 (1985) (indicating that the Fourth Amendment does not guarantee against all searches and seizures, only unreasonable searches and seizures).

The seizure of the driver "ordinarily continues, and remains reasonable, for the duration of the stop." *Johnson*, 555 U.S. at 333 (indicating that a traffic stop normally ends when law enforcement have no further need to control the scene and inform the driver he is free to leave). But an officer's inquiries into "matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure," so long as they do not "measurably extend the duration of the stop." *Id.*, *citing Muehler v. Mena*, 544 U.S. 93, 100-01 (2005). An officer may not prolong the stop, however, absent reasonable suspicion. *See Rodriguez*, 575 U.S. at 356 (holding that reasonable suspicion is required to continue an otherwise completed traffic stop in order to conduct a canine sniff).

**C. Objective Fourth Amendment Analysis**

In *Ohio v. Robinette*, the Supreme Court held that the Fourth Amendment does not require that a lawfully seized defendant be advised he is free to leave before his consent to search may be deemed voluntary. *See* 519 U.S. 33, 35, 40 (1996). After the officer in *Robinette* initiated a traffic

8

stop, a records check indicated the respondent had no prior violations. *Id*. at 35. The officer requested Robinette exit his vehicle, issued a verbal warning for speeding, and returned Robinette's driver's license. *Id*. At that point the officer asked, "One question before you get gone: [A]re you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?" *Id*. at 35-36. Robinette responded that he was not. *Id*. at 36. The officer requested consent to search the vehicle, which Robinette granted, and law enforcement discovered illegal drugs in the automobile. *Id*. Robinette unsuccessfully sought to suppress the evidence and was found guilty of possession of a controlled substance. *Id*.

In its opinion, the Supreme Court noted and reversed a portion of the state supreme court decision asserting similar arguments to those Appellant makes here: specifically, that the detention became unlawful when the officer determined not to give Robinette a citation, but returned to Robinette's vehicle and asked him to exit the automobile. *Id*. at 38. Citing to *Whren v. United States*, the Court noted that the subjective intentions of the officer did not render the continued detention of Robinette illegal so long as the circumstances, viewed objectively, justified the officer's actions. *See id.*, *citing Whren*, 517 U.S. at 813 (holding that the subjective intentions of an officer play no role in ordinary, probable-cause Fourth Amendment analysis). Under these circumstances when the officer had initiated a traffic stop for speeding, the Court held that law enforcement was objectively justified in requesting Robinette exit the vehicle, subjective thoughts notwithstanding. *See id.* at 38-39; *citing Mimms*, 434 U.S. 111 n.6.

**D. The Dash Cam Video Supports the Trial Court's Findings**

Viewing the evidence in the light most favorable to the trial court's findings, the record does not provide a basis upon which this Court can invalidate the trial court's findings. *See Abney*, 394 S.W.3d at 547. The video documents the several traffic violations that caused Sergeant Rangel

9

to initiate the traffic stop in the first place (driver's side tires of the trailer either touching or crossing over the yellow line; failure to activate turn signal; the license plate not visible on the trailer).

The dash cam depicts that once pulled over, Appellant exited his truck, wearing black slacks, black shoes, and a blue oxford dress shirt. Sergeant Rangel requested Appellant stand in the grass in the right shoulder of the road. Sergeant Rangel explained that he initiated a traffic stop because Appellant drifted onto the shoulder and the registration on the red pickup was hard to read.

Appellant responded that he was tired and that he was traveling with his wife and daughter. He stated that the black truck he was driving belongs to a friend. He produced proof of insurance for the vehicles and the trailer, and Sergeant Rangel commented that the license plate number listed on the insurance documents for the trailer did not match the plates on the trailer. Appellant explained that he was driving back to his home in Albuquerque after visiting his parents for a few days in Sullivan City, where he retrieved his red truck. He towed the red pickup to Sullivan City a month ago after it broke down in New Mexico, so he could "show it to [his] dad."

At time stamp 7:58 on the video, Sergeant Rangel informed Appellant that he provided a state identification instead of the requested driver's license, and questioned why Appellant appeared so nervous. Appellant responded that he was "real tired." The officer then conversed with Appellant's wife and again separately with Appellant. Both conversations were in Spanish.[5]

---

[5] We do not consider any portion of the dash cam video that is conducted in Spanish, because nothing appears in the record that would be an accurate translation of the Spanish conversations, and Appellant did not object to the introduction of the recording containing a foreign language. *Cf. Leal v. State*, 782 S.W.2d 844, 849 (Tex.Crim.App. 1989) (en banc) (indicating that after an objection is raised at trial, an interpreter must be sworn to translate a tape recording of a conversation in a foreign language, pursuant to Texas Code of Criminal Procedure article 38.30).

10

Sergeant Rangel returned to his patrol unit at time stamp 14:39 and stated that Appellant was "very nervous." At 17:00, Sergeant Rangel initiated a call to check records for Appellant and the vehicles. He relayed Appellant's birthdate and driver's license number at 18:57, and at 20:18, he provided the records check unit with the registration of all three vehicles. The records check unit responded at 23:09.

Sergeant Rangel called in for a second records check on the vehicles at 24:00. Thirty seconds later, he stated that the red pickup was registered to Appellant, while the black truck and trailer were not. He stated that Appellant's wife reported that the red truck belonged to a friend. He also commented that Appellant could not stand still and kept yawning.

At 26:10, Sergeant Rangel stated that Appellant had a criminal history, and he radioed a fellow officer for backup, in case he needed assistance. From time stamp 26:58 to 30:13, the records check unit informed Sergeant Rangel that Appellant's driver's license was suspended and that the had prior arrests for assault, fugitive from justice, multiple instances of possession of controlled substance, multiple instances of transferring a stolen vehicle, escape from a peace officer, battery and assault of a household member, receipt of a stolen vehicle, receipt of stolen property. Throughout this time, Appellant stood in front of the patrol unit, repeatedly yawning and rubbing his hands against his eyes and head.

Sergeant Rangel exited his patrol unit and approached Appellant at 30:30. Appellant stated that the black pickup belonged to "Ernesto." At 31:13, Sergeant Rangel informed Appellant that he should not be driving because his driver's license was suspended in New Mexico. Appellant volunteered that he did not travel through San Antonio, but rather took State Highway "83" out of Laredo.

11

Sergeant Rangel issued Appellant a citation warning at time stamp 32:50. As Appellant handed the signed warning citation back to Sergeant Rangel, he volunteered that "medication" is "getting [him] all drowsy." He indicated that he took medication for "HDHD." Appellant first claimed, "yes, I take, uh, they used to give me Ritalin and now its Adderall," but then stated that he did not currently take medication and was trying to get a prescription for Adderall. At time stamp 33:49, Sergeant Rangel then explained that he had a duty to ensure nothing further illegal is occurring, and that Appellant's behavior had raised a suspicion. The officer asked Appellant if he was engaged in any illegal behavior, and Appellant responded negatively. Appellant acknowledged that he was previously arrested for possession of methamphetamine and he had struggled with addiction since 2007. Sergeant Rangel requested consent to search Appellant and the vehicles at 35:11, and Appellant consented.

### E. No Trial Court Error

Appellant did not argue that the trial court erred by finding that his initial seizure for the traffic stop was illegal. Sergeant Rangel was performing an ordinary inquiry incident to the traffic stop when he ran a records check on Appellant's license. *Rodriguez*, 575 U.S. at 355. Through this constitutionally permissible seizure, the officer obtained probable cause to arrest Appellant for driving on a suspended license. *See* TEX.TRANSP.CODE ANN. § 521.457(f)(1); *see also Rodriguez*, 575 U.S. at 355 (noting an officer's duty to ensure that vehicles are operated safely and responsibly).

In addition to probable cause for driving on a suspended license, Sergeant Rangel objectively possessed reasonable suspicion that Appellant was engaged in criminal activity. *See Ramirez-Tamayo*, 537 S.W.3d at 36. When Sergeant Rangel requested Appellant provide his driver's license, Appellant produced a state identification card. Appellant did not own the black

12

pickup truck that he was driving or the trailer he was towing, and the license plates were not clearly visible on either vehicle. The license plate on the trailer did not match the plate numbers indicated on the insurance documents for the vehicle. He and his wife gave conflicting stories concerning who owned the red pickup truck. Appellant provided an odd story about towing the red truck from New Mexico to Texas and leaving the truck in Texas while he returned home. He was wearing dress clothes while towing a truck and driving through the night. Appellant also traveled through smaller cities, avoiding San Antonio. Sergeant Rangel's training and experience taught him that drivers involved in criminal activity often travel at night and avoid border checkpoints in larger cities. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (indicating that officers may draw on their own experience and specialized training to make inferences about the cumulative information when forming reasonable suspicion). The officer's experience also indicated it was odd that Appellant's nervousness did not decrease when he learned he would receive a warning citation. Finally, Sergeant Rangel requested consent to search as Appellant returned the warning citation, so the duration of the stop was not measurably extended. *See Johnson*, 555 U.S. at 333 (holding that a traffic stop remains lawful so long as unrelated investigations do not "measurably extend the duration of the stop"), cited with approval in *Rodriguez*, 575 U.S. at 355.

Appellant has not shown that the trial court erred in its factual findings. Indeed, he does not argue that the trial court erred in finding any specific fact. He argues only that the trial court erred by concluding that Sergeant Rangel had reasonable suspicion to request consent to search. Considering the totality of circumstances, however, which requires consideration of the facts taken together, they warranted further investigation. *See United States v. Arvizu*, 534 U.S. 266, 274-75 (2002); *United States v. Sokolow*, 490 U.S. 1, 9 (1989) (concluding that factors which were "quite

consistent with innocent travel" by themselves collectively amounted to reasonable suspicion). The trial court thus did not err by denying Appellant's motion to suppress.

## III. CONCLUSION

Having overruled Appellant's issue on appeal, we affirm the trial court's judgment adjudicating guilt.

JEFF ALLEY, Justice

January 25, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)